### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

DEXTER WATSON                                                    PETITIONER

v.                                       CIVIL ACTION NO. 5:14cv108-DCB-MTP

RAYMOND BYRD                                                    RESPONDENT

### REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Dexter Watson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having considered the submissions of the parties, the record of the state court proceedings, and the applicable law, the undersigned recommends that the Petition [1] be DENIED.

### FACTS[1] AND PROCEDURAL HISTORY

On Sunday, March 6, 2011, Patricia Dotson's body was found behind the First Baptist Church in Port Gibson, Mississippi. Dotson was beaten and stabbed to death. At the time of Dotson's death, she and Watson had been living in a car together. Dotson was a prostitute, and Watson was a self-described "hustler." Both were involved with drugs. Freddie Yarbrough, chief deputy of the Claiborne County Sheriff's Department, interviewed Watson the day Dotson's body was found. Watson told Deputy Yarbrough he had last seen Dotson the previous Wednesday. Deputy Yarbrough noticed stains on Watson's tennis shoes and scratches on both of his arms. Watson told Deputy Yarbrough the scratches and blood were from walking through the woods. Watson told Deputy Yarbrough those tennis shoes were the only pair of shoes he owned.

Deputy Yarbrough spoke with Watson the next day. Watson again stated that he had not seen Dotson. The blood on Watson's shoes was tested and found to belong to Dotson.

---

[1] The facts are taken verbatim from Watson's state court appeal. *Watson v. State*, 127 So. 3d

Dr. Mark Levon, a forensic pathologist, conducted the autopsy on Dotson. Dr. Levon concluded that Dotson died of multiple blunt- and sharp-force injuries, including a stab wound that severed her jugular vein. Dr. Levon opined that the superficial injuries on Dotson's right hand could be either defensive or offensive wounds, but the injury on her palm was consistent with a defensive wound.

Cecilia Kazery, an investigator with the Mississippi Bureau of Investigation, interviewed Watson. Watson first told Investigator Kazery that he had not seen Dotson in several days. Watson later told Investigator Kazery that two men named "Cool" and "Little Will" murdered Dotson. Investigator Kazery testified she was unable to locate these two men. Investigator Kazery interviewed Watson several days later. Watson told Investigator Kazery that Dotson was killed at John Duvall's house. Watson stated that Duvall, John Robinson, and Travis Turner were inside the house with Dotson. Watson was sitting outside and heard arguing inside. Watson entered the house and saw Dotson on the floor in a pool of blood. Watson told Investigator Kazery that Dotson was still alive. Watson, Duvall, and Turner put Dotson in the back of Turner's car and dumped her body behind the church. Watson said he stayed with Dotson for a few minutes and wiped blood off her face with his blue t-shirt, which he later threw into an abandoned building near the church. Watson also covered Dotson's private parts.

Investigator Kazery testified that she found Watson's blue t-shirt in the abandoned building and noted that Dotson's private parts were covered but was unable to corroborate any other facts from Watson's story. No blood or evidence of any cleanup was found in Duvall's house or in Turner's car. Robinson's car was also tested for the presence of blood, but none was found.

270, 271–72 (Miss. Ct. App. 2013).

During trial, Watson testified that he was with Dotson, Cool, and Little Will near the church. Watson said Dotson and Little Will went behind the church. Cool told Watson, "You better not open your mouth." Watson said he went behind the church and found Dotson bleeding and gasping for air. Dotson told Watson, "Baby, I love you" and then died.

On January 19, 2012, the jury in the Claiborne County Circuit Court found Dexter Watson guilty of murder. State Court Record ([23-1] at 26.) Watson was sentenced to serve life in the custody of the Mississippi Department of Corrections. *Id.* at 31.

Petitioner, through counsel, appealed his conviction to the Mississippi Court of Appeals, raising the following grounds for relief:

1. Whether the trial court erred when it overruled Watson's motion for a new trial based on the weight of the evidence.

2. Watson reserves the right to raise any issues relating to ineffective assistance of counsel that are not fully apparent from the record.

*Watson v. State*, 127 So. 3d 270, 272 (Miss. Ct. App. 2013), *reh'g denied*, September 17, 2013, *cert. denied*, November 21, 2013 (Cause No. 2012-KA-00291-COA).

On March 19, 2013, the Mississippi Court of Appeals affirmed Petitioner's conviction in a written opinion. *Id.* On May 6, 2014, Petitioner sought leave from the Mississippi Supreme Court to file his motion for post-conviction collateral relief in the trial court in which he asserted the following grounds (as stated by the *pro se* Petitioner in his "Concise Statement of Claims"):

1. Denial and violation of the constitutional right to a fast and speedy trial, see U.S.C. Amendments 6 and 14, Miss. Const. Art. 3, § 26 and § 14;

2. Petitioner due process fundamental constitutional rights was violated when petitioner did not have an initial appearance according to URCCC Rule 6.03 and Miss. Const. Art. 3 §§ 14, 23 and 26 U.S.C.A. 6, 4 and 14;

3. Petitioner due process and fundamental constitutional rights was violated when petitioner was arrested without probable cause according to Ms. Const. Art 3 § 23 and 14 and Amendment 4 and 14;

3

4.  Petitioner was deprived of effective assistance of trial counsel. See U.S.C. Amendment 6 and 14, Miss. Const. Art. 3, § 26 and § 14;

5.  Petitioner was deprived of effective assistance of appellate counsel, see U.S.C. Amendments 6 and 14, Miss. Const. Art. 3, § 26 and § 14;

6.  Evidence presented at trial was insufficient to prove the elements of the crime beyond a reasonable doubt, and the jury verdict is contrary to the overwhelming weight of the evidence, which only supports the petitioner's defense.

([23-6] at 176-77.)

On September 24, 2014, the Mississippi Supreme Court denied Petitioner's application

stating:

> In his first petition for post-conviction relief, Watson raises several claims regarding a speedy-trial violation, denial of initial appearance, lack of probable cause, ineffective assistance of trial and appellate counsel, and the weight and legal sufficiency of the evidence. The panel finds that Watson fails to meet the requisite prongs of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The panel also finds that Watson fails to present a substantial showing of the denial of a state or federal right. After due consideration, the panel finds that the petition and motion to proceed *in forma pauperis* should be denied.

([23-6] at 35.)

In October of 2014, Petitioner again sought leave from the Mississippi Supreme Court to

file another motion for post-conviction collateral relief in the trial court in which he asserted the

following grounds:

1.  Petitioner fundamental constitutional rights was violated when jury was improperly instructed denying Petitioner a fair and impartial jury, see Ms. Const. Art. §§ 14 and 26, and U.S.C. Amendment 6 and 14.

2.  Petitioner fundamental constitutional rights was violated when jury was not instructed on the essential elements of the offense, denying Petitioner a fair and impartial jury, see U.S.C. Amendment 6 and 14, and Ms. Const. Art. 3, §§ 14 and 26.

([23-6] at 7-8.)

4

The Mississippi Supreme Court denied this application on December 10, 2014, as a successive writ pursuant to Miss. Code Ann. § 99-39-27(9). (*See* [22-3].) The court stated that "Watson fails to meet any recognized exception to the procedural bars and fails to present a substantial showing of the denial of a state or federal right. *Rowland v. State*, 98 So.3d 1032, 1035-36 (Miss. 2012)." *Id.* They also found that "[p]rocedural bars aside, we find that Watson's claims regarding his jury instructions [are] without merit." *Id.*

On November 11, 2014, Petitioner filed the instant Petition for Writ of Habeas Corpus. Petitioner asserts the following grounds for relief (as stated by the *pro se* Petitioner):

**Ground One**: Mr. Watson was subject to an illegal arrest, unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**Ground Two**: The evidence was insufficient to convict Watson of murder under the due process clause of the Fifth and Fourteenth Amendment of the United States Constitution.

**Ground Three**: Watson fundamental constitutional rights was denied when jury was improperly instructed, denying Watson a fair and impartial jury under the Six and Fourteenth U.S.C. Amendment.

**Ground Four**: Watson fundamental constitutional rights was denied when jury was not instructed on the essential elements of the offense, denying Watson a fair and impartial trial under the 6 and 14 U.S.C.A.

**Ground Five**: When due process fundamental constitution rights was denied when Watson did not have an initial appearance under URCCC Rule 6.03 and the Sixth, Fourth, and Fourteenth Amendment of the United States Constitution.

**Ground Six**: Watson was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, failed to do a thoroughly pretrial investigation.

**Ground Seven**: Watson was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, when counsel rejected Watson lesser offense instruction of manslaughter.

**Ground Eight**: Watson was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, when counsel did not obtain a

5

blood-stain pattern expert.

(*See* Petition [1] at 1-24.) Petitioner also filed an amended petition in which he raised the following grounds:

> **Ground Nine**: Trial counsel for petitioner was ineffective for failure to request a circumstantial evidence instruction to the jury, denying petitioner Sixth Amendment right to effective assistance of counsel.

> **Ground Ten**: Petitioner was denied effective assistance of appellant counsel, denying petitioner Sixth Amendment right to effective assistance of appellant counsel.

*See* Amended Petition [18] at 1-5.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires the exhaustion of a claim in state court before a federal court may consider the claim as part of a habeas petition. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Respondent concedes that Watson's claims were considered by the state's highest court either on direct appeal or on post-conviction review. (See Answer [22]at 10, ¶ 6); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).

Section 2254(d) provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).   The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The "contrary to" clause applies when the state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause applies when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08. The "unreasonable application" inquiry is based on an objective standard, and "unreasonable" does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S.86, 102-03 (2011) (internal quotations omitted). A federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

## **<u>Ground One</u>**

In ground one of his petition, Watson alleges he was subject to illegal arrest and unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution and that he was held without probable cause from March 7-18, 2017. *See* [3] at 3-4. Watson argues that any statement or evidence taken in this time period should have been excluded as it violated these constitutional provisions. *Id.* Respondent submits that the claims in ground one are barred from federal habeas corpus review as Watson had an opportunity at the state court level to suppress this evidence.

In *Stone v. Powell*, 428 U.S. 465, 482 (1976), the United States Supreme Court held that

7

"where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[2] "This preclusion on federal courts to grant habeas relief based on a fourth amendment violation acts as a bar to such relief 'absent a showing that the state prisoner was denied an opportunity for full and fair litigation of that claim at trial and on direct review.'" *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir.1986) (*quoting Stone*, 428 U.S. at 494 n. 37). Petitioner bears the burden of proving the denial of a full and fair litigation of the issue in state court. *Davis*, 803 F.2d at 1372.

Regardless of whether or not the opportunity is employed or is successful, the opportunity to present a Fourth Amendment claim to the state trial and appellate courts constitutes "'an opportunity for full and fair consideration' of a defendant's fourth amendment claim under *Stone* absent sufficient factual allegations and proof that the state process is 'routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits.'" *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir.1981) (quoting *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir.1980)). The Fifth Circuit has "interpreted an 'opportunity for full and fair litigation' to mean just that: 'an opportunity.'" *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). Petitioner had an opportunity at the state court level to file a motion to suppress evidence on fourth amendment grounds, thus, this ground is barred from habeas review. *See Id.*[3]

---

[2] The protections of the Fourth Amendment are applied to the States through the Fourteenth Amendment. *See Stone*, 428 U.S. at 466.

[3] Available to petitioner around the time of his trial were "motions to dismiss, to suppress evidence, to request discovery, for continuance, for severance, for appointment of experts, for

## **Ground Two**

In ground two, Watson argues that the evidence was insufficient to support his conviction of murder. Watson contends that the State failed to prove all elements of the crime charged. According to Watson, the State presented only circumstantial evidence and failed to prove "malice aforethought" beyond a reasonable doubt to sustain his murder conviction. *See* [3] at 7;[27] at 8-9.

Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).   The determination of the sufficiency of the evidence by a state appellate court is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) ("Where state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference."))

The State was required to prove beyond a reasonable doubt that "(1) On or about the 6th day of March, 2011, in Claiborne County, Mississippi; (2) the defendant, Dexter Watson, did

---

mental examination, or any other motions addressed to matters which may delay the trial." *See* Mississippi Uniform Rule of Circuit a County Court 8.02; *see also e.g. Melton v. State*, 771 So.2d 1010, 1012 (Miss. Ct. App. 2000). This Uniform Rule will be supplanted by Mississippi Rule of Criminal Procedure 16.1, which uses the same language, on July 1, 2017. Petitioner also claims that his trial counsel was ineffective for failing to investigate and file a motion to suppress. This issue is discussed in ground six.

wilfully, unlawfully, feloniously, of his malice aforethought and without the authority of law,

kill and murder Patricia Dotson; (3) a human being." (*See* Jury Instruction [23-1] at 14; *see also*

Indictment [23-1] at 7.) The Mississippi Court of Appeals addressed and rejected Petitioner's

argument regarding the weight of the evidence:

> Watson argues the State failed to produce any direct evidence that tied him to
> Dotson's murder. Although Watson told several versions of how Dotson died, he
> admitted during trial that he was with her when she died. Also, the blood on
> Watson's shoes was determined to be from Dotson. Circumstantial evidence is
> evidence that, "without going directly to prove the existence of a fact, gives rise
> to a logical inference that such [a] fact does exist." *McInnis v. State*, 61 So.3d
> 872, 875 (¶ 11) (Miss.2011) (citation omitted). It is entitled to the same weight
> and effect as direct evidence. *Sherrell v. State*, 622 So.2d 1233, 1238
> (Miss.1993). From the evidence presented including–Watson's statements to law
> enforcement, his admission that he was there when Dotson died, and Dotson's
> blood on his shoes—we cannot find that to allow the verdict to stand would
> sanction an unconscionable injustice. The jury clearly resolved any conflicts in
> the evidence in the State's favor. This issue is without merit.

*Watson*, 127 So. 3d 270, 272.

The evidence in this case, when viewed in the light most favorable to the State, is not

such that no "rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Santellan*, 271 F.3d at 193. The undersigned finds that Petitioner has not

established that the Mississippi Court of Appeal's decision on this issue is contrary to, or

involves an unreasonable application of, clearly established federal law, or that the decision was

based on an unreasonable determination of the facts in light of the evidence. *See Rubio v.*

*Quarterman*, 2008 WL 701384, at *12 (S.D. Tex. Mar. 13, 2008). Accordingly, this ground for

habeas relief should be denied.

### **Grounds Three and Four**

In grounds three and four, Petitioner argues that the jury was not instructed correctly.

However, Petitioner's claims in grounds three and four were raised in his *second* motion for

10

post-conviction relief in the state court, and that application for leave to proceed was held to be barred pursuant to Miss. Code Ann. § 99-39-27(9) of the Mississippi Uniform Post-Conviction Collateral Relief Act, as a successive petition. (See [22-3].) Additionally, the court found that "[p]rocedural bars aside, we find that Watson's claims regarding his jury instructions [are] without merit." *Id.* (*See* [22-3].) However, as the state court found the arguments contained in these grounds were barred as a successive petition, these grounds are barred from habeas review as the issues were decided by an independent and adequate state law.[4]

"[F]ederal habeas is generally barred if [a] state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir.2001) (citing *Coleman v. Thompson*, 501 U.S. 722; *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir.1995); The Fifth Circuit has specifically found the procedural bar of Miss. Code Ann. 99-39-23(6) of the Mississippi Uniform Post-Conviction Collateral Relief Act ("UPCCRA"), which is nearly identical to the procedural bar found in § 99-39-27(9), to be an independent and adequate state bar.[5] *See Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir.1998); *Lott v. Hargett*, 80 F.3d 161,

---

[4] When a state court rules that a claim is procedurally barred, the fact that the court, as here, alternatively reached the merits of the claim does not vitiate the independent and adequate state procedural bar. *See Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir.2003); *Foster v. Johnson*, 293 F.3d 766, 790 (5th Cir.), *cert. denied*, 537 U.S. 1054 (2002); *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir.1998) ("It is clear in this Circuit that alternative rulings do not operate to vitiate the validity of a [state] procedural bar that constitutes the [state court's] primary holding."); *Riley v. Epps*, No. 2:09CV137-KS-MTP, 2012 WL 2177294, at *3 (S.D. Miss. May 15, 2012), *report and recommendation adopted*, No. 2:09-CV-137-KS-MTP, 2012 WL 2154352 (S.D. Miss. June 13, 2012); *see also Walker v. Epps*, No. 1:97CV29KS, 2012 WL 1033467, at *31 (S.D.Miss. Mar. 27, 2012) ("Courts do not have to use the word 'alternatively' to signal that a holding on the merits is merely an alternative holding.").

[5] The difference between the successive writ provision in the section at issue in this case, § 99-39-27(9), and the successive writ provision in § 99-39-23(6), is the Mississippi court where the motion is filed. Section 99-39-23(6) governs motions for post-conviction relief in the trial court and section 99-39-27(9) governs applications for leave to seek post-conviction relief in the

164-165 (5th Cir.1996). *See, also, Chancellor v. Mississippi*, 129 F.Appx. 878, 879 (5th Cir.2005) ("The procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 803 (1991).") Both subsections provide that a prior decision on a post-conviction motion (or application) "shall be a bar to a second or successive" petition (or application). *See* Miss. Code Ann. §§ 99-39-23(6) and 99-39-27(9).

A petitioner may overcome the procedural bar and still have a federal court address these claims by showing cause for it and actual prejudice from application of the procedural bar. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir.1993). Petitioner's procedural default in state court was directly attributable to him as he filed his own motions for post-conviction relief yet failed to raise these issues in his first post-conviction relief motion. Moreover, he identifies no external impediment.

He may also overcome this bar by showing that the state does not strictly or regularly apply this procedural bar. Petitioner "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Stokes,* 123 F.3d at 860. Petitioner has not met this burden. The Fifth Circuit has determined that "[a]fter reviewing the cases in which the Mississippi courts have applied the UPCCRA, we do not find any evidence that the Mississippi courts have applied the UPCCRA in an inconsistent manner." *Moore v. Roberts*, 83 F.3d 699, 703 (5th Cir. 1996).

---

appellate court.

A petitioner may also circumvent the bar by showing the procedural bar creates a fundamental miscarriage of justice. However, petitioner has failed to demonstrate a "fundamental miscarriage of justice[.]" *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992). The "fundamental miscarriage of justice" is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (*citing Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted). Petitioner has not come forward with any new evidence. Therefore, grounds three and four are barred from habeas review. *See Moawad* 143 F.3d at 947.

## **Ground Five**

In ground five, Watson contends that his constitutional rights were violated because he was denied an initial appearance and evidence was introduced at trial that was gathered while he was in jail in violation of Rule 6.03 of Mississippi's Uniform Rules of Circuit and County Court Practice("URCCC") and the Fourth Amendment (*See* [3] at 21.) He claims that the evidence collected in violation of his rights including statements made by him should not have been admissible at trial. *Id; see, also [3] at 4.* As discussed above, Watson's arguments pertaining to the evidence not being excluded under the Fourth Amendment are barred from habeas review.[6] *See Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir.1986); *see, supra*, ground one.

---

[6] His arguments in this ground are substantially the same as in ground one. This ground is barred because petitioner had an opportunity in state court to file a motion to suppress the evidence.

13

**Grounds 6, 7, 8, 9, and 10 Ineffective Assistance of Counsel**

In grounds six, seven, eight, nine, and ten, Petitioner argues that he was provided

ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United

States Supreme Court defined the standard by which an ineffective assistance of counsel claim in

a habeas proceeding is to be measured. Pursuant to *Strickland*, Petitioner must show that his

"counsel's performance was deficient" and that "the deficient performance prejudiced the

defense." 466 U.S. at 687; *see also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating

that satisfaction of the standard requires a showing that counsel's acts "fell below an objective

standard of reasonableness").   In order to establish a deficiency, Petitioner must show that

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

the Sixth Amendment." *Id*. This Court's "scrutiny of counsel's performance must be highly

deferential" and it must "indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance."   *Id*. at 689; *see also Moawad v. Anderson,*

143 F.3d 942, 946 (5th Cir. 1998) (observing that the court "gives great deference to counsel's

assistance, strongly presuming that counsel has exercised reasonable professional judgment")

(internal quotations and citations omitted).

"To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege

but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th

Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). Further, Petitioner

must not only prove that the outcome of his trial would have been different "but for counsel's

alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair

or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). An ineffective assistance of counsel claim must be stated with specificity. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Summarily reciting general complaints about counsel's performance without discussing their specific basis or how application of the law purportedly justifies relief does not state a claim for habeas review. *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.")

In considering Petitioner's application for post-conviction relief, the Mississippi Supreme Court reviewed the claims of ineffective assistance of counsel and determined that Petitioner failed to meet his burden. ([22-2];[23-6] at 35.) Given that the ineffective assistance of counsel claims before this Court present a mixed question of law and fact and that *Strickland* is the "clearly established Federal law" which governs such claims, the issue in this case is "whether the Mississippi Supreme Court's decision to reject [Petitioner's] ineffective assistance claim[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland*." *Neal v. Puckett,* 286 F.3d 230, 236 (5th Cir. 2002).

### *Ground Six*

In ground six, Watson argues that his trial counsel did not adequately investigate the case before trial as counsel was not appointed until nine months after his arrest and he did not see his counsel for another month after that. (*See* [3] at 26-27;[27] at 12.) He claims that if his trial counsel had investigated, counsel would have discovered that Watson was not given an initial appearance for the murder charge in violation of URCCC 6.03, and that he was not given a probable cause hearing. He also claims that counsel would have found that evidence from the

crime was placed in the trash and then removed from the trash. He asserts an investigation should have resulted in his counsel filing pretrial motions to suppress evidence. ([1] at 13; [3] at 25-28; [27] at 11-12.) He also alleges that his counsel should have interviewed an individual named Ronnie Thompson to find his association with "Cool" and "Little Will." ([3] at 26.)

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Moawad*, 143 F.3d at 948 (citation omitted). To prevail on such a claim, Petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *Id*. "Without [a] specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland*'s standards." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). It has been routinely recognized that conclusory allegations of ineffective assistance of counsel claims are insufficient to warrant habeas relief. *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002).

As discussed above, in *Stone v. Powell*, 428 U.S. 465 (1975), the United States Supreme Court held that where a state provides an opportunity for "full and fair litigation" of a Fourth Amendment claim, a state prisoner cannot be granted habeas relief on the basis that illegally seized evidence was admitted at trial. However, the Supreme Court later held this restriction does not extend to Sixth Amendment claims of ineffective assistance of counsel where the principal allegation is the failure to file a timely motion to suppress evidence obtained in violation of the Fourth Amendment. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would

16

have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375. Accordingly, in order to show ineffective assistance in these circumstances, Petitioner must first show that his Fourth Amendment claim has merit. *See United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987) ("The inquiry turns on whether a hypothetical motion to suppress would have been successful.")

Petitioner asserts that police officers lacked probable cause to arrest him for murder. Petitioner argues that he was arrested on March 6, 2011, and was not given an initial appearance or a probable cause hearing, and that this should have resulted in his counsel filing motions to exclude evidence before the murder trial.

As an initial matter, a violation of URCCC 6.03, the Mississippi initial appearance rule, "does not equate to a Fourth Amendment violation." *See Burnett v. Pearl River Basin Narcotics Task Force*, 2011 WL 4344542 at *9 (S.D. Miss. Sept. 14, 2011) (citations omitted). Rule 6.03 of the URCCC provides that "[e]very person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." However, under Mississippi law there is no *per se* rule that the failure to provide an initial appearance within 48 hours constitutes reversible error so long as the defendant was informed of his rights and made a knowing and voluntary waiver. *Lawrence v.. State*, 869 So.2d 353, 355-56 (Miss.2003). According to the record, Petitioner waived his Miranda Rights before every interview.[7] A voluntary waiver of these rights also results in a waiver of the URCCC 6.03 presentment requirement. *E.g. Bell v. State*, 963 So.2d 1124, 1135-36

---

[7] *See Watson v. State*, 127 So. 3d at 271 n.4. ("Unless otherwise noted, Watson was read his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), each time he was questioned."); )([23-2] at 27, 31-32; 52.)

(Miss.2007); *see also, United States v. Barlow*, 693 F.2d 954 (6th Cir.1982) (waiver of one's Miranda rights also constitutes a waiver to prompt judicial warning of one's constitutional rights in accordance with Fed.R.Crim.P. 5). Therefore, any failure of trial counsel to discover this alleged violation of URCCC 6.03 would not have resulted in prejudice to the defendant.

Separate from the initial appearance argument, Watson claims that he was not given a probable cause hearing after being arrested on March 6, 2011. He argues the lack of hearing violated his Fourth and Fourteenth Amendment rights, and that counsel was ineffective for failing to try to exclude evidence collected March 7-18, 2011, while he was detained without this hearing.

Usually, a probable cause determination should be made within 48 hours following a warrantless arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) *see also* Gerstein v. Pugh, 420 U.S. 103 (1975). A person arrested pursuant to a warrant, however, is not constitutionally entitled to a separate judicial probable cause determination. *McLaughlin*, 500 U.S. at 53. ("Under *Gerstein*, warrantless arrests are permitted but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause"); *Baker v. McCollan*, 443 U.S. 137, 143 (1979).

Portions of the record indicate that Watson was arrested for possession of drug paraphernalia on March 6, 2011. (See [27] at 46 (jail record); [27] at 51 ("Drugs paraphernalia in [Watson's] right front pocket . . . . transported to . . . detention center without further incident."))[8] Petitioner makes no argument attacking a lack of hearing from detention from drug

---

[8] According to Watson, "[t]he record shows that Watson was in the hands of the police . . . for the 'paraphernalia' misdemeanor charge." (*See* [27] at 22.) He also states that he was arrested "after a pat-down search and [it was] discovered" that he had paraphernalia in his pocket. (*See* [28] at 2.)

paraphernalia. Further, the record demonstrates that an arrest warrant for the murder charge was issued for petitioner on March 18, 2011. *See* [3] at 84, 85. It also reflects that Watson was given an initial appearance for the murder charge on March 19, 2011, the day after the warrant was issued for murder. (*See* [22-4].)

Even assuming Watson was arrested for the murder on March 6, 2011, and was not given a prompt probable cause hearing within 48 hours, he has not affirmatively proven that counsel's alleged failure to discover this purported *Gerstein-McLaughlin* (lack of a probable cause hearing) violation would have resulted in the exclusion of evidence that would have affected the outcome of his trial.

As an initial matter, "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Moreover, Petitioner's reliance on a *McLaughlin* violation necessarily leading to evidence being excluded is misplaced. Although Petitioner accurately identifies the holding in *McLaughlin*, the Supreme Court has not specified the remedy for an unreasonable delay in a probable cause determination. *See Powell v. Nevada*, 511 U.S. 78, 84–85 (1994); *United States v. Fullerton*, 187 F.3d 587, 591 (6th Cir.1999); *see Hunt v. Wolfenbarger*, No. 04–10046, 2007 WL 2421551, at * (E.D.Mich. Aug.27, 2007) (concluding habeas relief was not available because, although a *McLauglin* violation may have occurred, the Supreme Court had not identified the appropriate remedy for the violation and therefore federal law had not been clearly established); *Hannah v. Newton-Embry*, No. CIV-04-946-F, 2005 WL 1656919, at *6 (W.D. Okla. July 7, 2005)("Suppression of the evidence was not mandated by clearly established federal law as enunciated by the Supreme Court. [Petitioner] targets a different constitutional violation-failure to obtain authorization from a magistrate for a significant period of pretrial detention. Whether a

suppression remedy applies in that setting remains an unresolved question. . . .")(citations omitted). Because federal habeas relief is only available when a "state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the *Supreme Court of the United States*," 28 U.S.C. 554(d)(1) (emphasis added), the undersigned cannot find that the Mississippi Supreme Court's decision rejecting petitioner's claim on ineffective assistance of counsel from failure to investigate and file a motion to suppress on this issue was an unreasonable application of the *Strickland* standard.

Furthermore, much of the evidence obtained from Watson and used against him at trial was obtained from him before his arrest or within 48 hours of it. This evidence could have supported a conviction. *See United States v. Fullerton*, 187 F.3d 587 (6th Cir.1999)(4-day delay in probable cause determination by magistrate does not require suppression of physical evidence seized at time of defendant's arrest; such evidence "not obtained pursuant to the *McLaughlin* violation"); *Bell v. State*, 963 So.2d 1124 (Miss.2007) (later illegal delay does not affect voluntary confession obtained within permissible 48 hour period); *Black v. State*, 871 P.2d 35 (Okl.Crim.App.1994) ( Noting that "*McLaughlin* does not indicate a defendant's remedy if the procedure is not followed," but a lack of timely probable cause determination does not require suppression of evidence seized from defendant immediately after his arrest); *State v. Lawrence*, 154 S.W.3d 71 (Tenn.2005) (*Gerstein-McLaughlin* violation does not require suppression here, as "all of the evidence sought to be suppressed was obtained before the delay ripened into a constitutional violation"); *State v. Koch*, 175 Wis.2d 684, 499 N.W.2d 152 (1993) (Finding although the law is not settled on the remedy for a *Gerstein-McLaughlin* violation, that a probable cause determination that came over 92 hours after defendant's arrest, does not require suppression of evidence obtained before the violation ripened).

The record reflects that Watson was interviewed on Sunday, March 6, 2011, the day the victim's body was found, and Watson was given Miranda warnings. (Trial Transcript [23-2] at 27-32.)[9] During that interview, Detective Yarbrough noticed blood stains on Watson's tennis shoes and scratches on his arms, and collected his shoes for testing. *Id.* The detective sent those shoes to the Mississippi Crime Lab. *Id.* According to Yarbrough, during that interview, Watson told him that the blood on his shoes was from his own arm bleeding. *Id.* The detective also interviewed him the next day, March 7, 2011, after giving him further Miranda warnings. *Id.* In that interview, Watson indicated to the detective that he had not seen Patricia lately. *Id.* Thereafter, it was discovered by experts at the Mississippi crime lab that the blood on Watson's shoes belonged to Patricia. *Id.* at 80. Even if some evidence from after this interview was excluded, Watson has not shown exactly what particular evidence would have been excluded and how that would have affected the outcome of his trial.

Petitioner contends that counsel failed to investigate that some evidence in his case was allegedly "mishandled" by being thrown in the trash. He claims that his counsel would have filed a motion to suppress if this had been discovered, and he was ineffective for failing to investigate and file this motion to suppress. This argument is without merit. Petitioner attaches statements that appear to be from female relatives of the victim, Patricia Dotson, in support of his contention that evidence was mishandled. (*See* [3] at 101-102.) Aside from being unsworn and unsigned, the statements, dated April 11, 2011 and April 14, 2011, do not reveal what an investigation further into the matter would have uncovered or how it would have affected the trial. The statements indicate that relatives on March 7, 2011, after 10 a.m. saw an officer removing numerous items

---

[9] The transcript reflects the interview took place in 2010. This appears to be an inadvertent misstatement of the date.

with blood on them from a trash can at the police station and that officer told them that a cleaning lady must have put evidence in the trash can. The officer also apparently told the women that he thought the evidence with blood on it was supposed to go with her body. This evidence included "half of a brick, a bottle of clear liquor", "large piece of plastic with a lot of blood on it." *Id.* The statements also indicate that blood was running out of the bottom of the trash can. Apparently they reported their concerns to the Police Chief and he assured them that the evidence was not from Patricia Dotson's case and "that the evidence that [they] witnessed in the trash was from the 'nineteen sixties', and that he had all the evidence from the Patricia Dotson's case with him." *Id.*

First, the only item which investigators testified at trial was "wet" with blood was Watson's t-shirt, which was not collected until *after* March 7, 2011. Furthermore, Dexter's shoes with blood on them were collected March 6, 2011, and sent to and received by the Mississippi crime lab on March 7, 2011, by 11:59 a.m. *See* Request for Analysis [23-6] at 286.

Thus, it is not clear that this "evidence" in the trash had any connection with this case, and petitioner has not pointed to what evidence should have been excluded or how specific excluded evidence would have affected his trial. The Mississippi Supreme Court has held that "[t]he test of whether there has been a break in the chain of custody of evidence is whether there is an indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." *Ellis v. State*, 934 So. 2d 1000, 1005 (Miss. 2006). A mere suggestion of tampering is not enough to establish a reasonable inference of probable tampering. *Hughes v. State*, 90 So. 3d 613, 632 (Miss. 2012). "[T]he burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant." *Hemphill v. State*, 566 So. 2d 207, 208 (Miss. 1990). The determination of whether a proper chain of custody has been established is within the

discretion of the trial court. *Nalls v. State*, 651 So. 2d 1074, 1077 (Miss. 1995). The State does not have to produce every person who handled the evidence, nor does the State have to account for every minute of every day. *Butler v. State*, 592 So. 2d 983, 985 (Miss. 1991). "[B]reaks in the chain of custody go to the weight of the evidence, not its admissibility." *Jenkins v. State*, 997 So. 2d 207, 213 (Miss. App. 2008); *see also Robinson v. State*, 758 So.2d 480, 488(¶ 31) (Miss.Ct.App.2000); *Fisher v. State*, 481 So.2d 203, 225 (Miss.1985)..

He additionally argues that his counsel should have interviewed an individual named

Petitioner has not shown that any evidence "from the trash can" would have been excluded or how it would have affected his trial, and "breaks in the chain of custody go to the weight of the evidence, not its admissibility." *See Id.* The Mississippi Supreme Court had these statements about evidence in the trash before it when evaluating Watson's ineffective assistance of counsel claim, and the undersigned cannot say that the Mississippi Supreme Court unreasonably applied the *Strickland* standards when denying petitioners claims. (*See* [23-6] at 293-294). Thus, petitioner should be denied relief on this ground.

He additionally argues that his counsel should have interviewed an individual named Ronnie Thompson to find his association with "Cool" and "Little Will." ([3] at 26.). However, he has not "provide[d] factual support as to what exculpatory evidence further investigation" into Ronnie Thompson would have revealed. *Moawad*, 143 F.3d at 948 (citation omitted). "Without specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland*'s standards." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

For the reasons described above Petitioner has failed to establish that the Mississippi Supreme Court unreasonably applied the *Strickland* requirements pertaining to his arguments contained in ground six.

*Ground Seven*

In ground seven, Petitioner contends that his trial counsel rendered ineffective assistance by failing to pursue a manslaughter instruction. However, the record reflects that defendant chose not to submit a manslaughter instruction and that a manslaughter instruction was not supported by the evidence. After noting on the record that the defendant had chosen not to submit a manslaughter instruction and did not wish to have one submitted, the trial judge added, "The state has agreed that and the court does not believe that there's any -- I believe the evidence in this case justifies that, so I'll allow him not to give that instruction." ([23-2] at 135-136.). Petitioner's testimony at trial was that he did not kill Patricia, but that "Little Will" did.

The evidence presented at trial did not support a manslaughter instruction and counsel's failure to request one cannot be the basis for an ineffective assistance claim. *See Stewart v. Kelly*, No. 4:04-CV-8-LS, 2006 WL 3918060, at *9 (S.D. Miss. Nov. 17, 2016) (*citing Kinnamon v. Scott*, 33 F.3d 462, 464 (5th Cir. 1994)) ("Failure to request an instruction on a lesser included offense cannot form the basis for an ineffectiveness claim where the evidence does not support the instruction."). Moreover, even if Watson were entitled to an instruction on the lesser included offense of manslaughter, his counsel's failure to request such an instruction could have been a matter of trial strategy.

As indicated above, Petitioner's testimony at trial was that he did not kill Patricia, but that "Little Will" did. As such, it was a matter of sound trial strategy to forgo submitting a manslaughter instruction that did not line up with petitioner's version of the events. *See Miller v. Waller,* No. Civ.A.2:02CV61DMR–RHW, 2006 WL 1586551, at *5 (S.D.Miss. Mar. 27, 2006) ("Given counsel's defensive theory as presented to the jury, it was a permissible exercise of trial strategy not to request a manslaughter instruction."); *Strickland,* 466 U.S. at 689 ("the defendant

24

must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal citations and quotations omitted). Therefore, the undersigned cannot say that the state court, in denying Petitioner's post-conviction appeal, made an unreasonable decision in not finding Petitioner's counsel ineffective under this argument. This ground should be denied.

### Ground Eight

In ground eight, Watson contends that counsel was ineffective for failing to call a "blood stain" pattern expert witness. Watson argues that an expert would have been able to testify that the blood stain on his shoe was not from blood dripping on his shoe. According to Watson, this expert testimony would support his own testimony that the victim was lying on the ground when he found her. (*See* [3] at 30-31.)

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)(citations omitted). For Petitioner "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) Petitioner "must show a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt." *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998)(citations omitted).

At trial, the State did not base its case on the fact that blood dripped onto Watson's shoe. The testimony from the witnesses in the case merely established that the blood was on his shoe, not that it dripped on it. Accordingly, the undersigned cannot say that counsel was ineffective in failing to call a blood stain" pattern expert witness. Petitioner has failed to establish that the Mississippi Supreme Court unreasonably applied the *Strickland* requirements contained in his arguments in ground eight.

### Ground Nine

In ground nine, Watson argues that counsel was ineffective for failing to request a circumstantial evidence instruction. (*See* [18] at 2-3.) Watson contends that although counsel requested a "two-theory" instruction, his failure to request a circumstantial evidence instruction was error. According to Watson, the failure to request this instruction "lightened the burden on the state." *Id.*

The "two-theory instruction" is given in cases, where 'the 'record supports two or more hypotheses of the crime committed' and all the evidence of the crime is circumstantial." *Smith v. King*, No. 3:08CV486 HTW-LRA, 2011 WL 3684505, at *7 (S.D. Miss. Aug. 2, 2011), *report and recommendation adopted*, No. 3:08-CV-486 HTW-LRA, 2011 WL 3684370 (S.D. Miss. Aug. 22, 2011). With regard to a general circumstantial instruction and "two-theory" instruction, state law provides that "[o]ne (but not necessarily both) of these instructions must be given when requested by the defendant, only if the case against him is 'purely' or 'wholly' circumstantial as opposed to direct." *Jordan v. State*, 158 So. 3d 348 (Miss. Ct. App. 2014), *reh'g denied*, Nov. 25, 2014, *cert denied*, February 26, 2015 (Cause No. 2013-KA-00183- COA); *see also Goff v. State*, 14 So.3d 625, 662–63 (¶ 162) (Miss.2009).

As a two-theory instruction was given in this case an additional circumstantial evidence instruction was not necessary.[10] Accordingly, undersigned cannot say that counsel was ineffective when submitting jury instructions or that the Mississippi Supreme Court's conclusion that this claim did not meet the *Strickland* standard was unreasonable. Therefore, this ground should be denied.

### *Ground Ten*

Finally, in ground ten, Watson contends that appellate counsel was ineffective for failing to raise an issue on direct appeal arguing that Watson was denied his right to an initial appearance and probable cause hearing. (*See* [18] at 3.) In reviewing the performance of appellate counsel, the two-pronged test of *Strickland* is likewise applied. *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). As discussed above, Watson's claim challenging the denial of an initial appearance and probable cause hearing is without merit. *See,* supra, discussion ground six. The failure to raise a meritless claim is not error on appeal. *See Mayabb v. Johnson*, 168 F. 3d 863, 869 (5th Cir. 1999) (because there was no error at trial, by extension, there is no error at the appellate level for failure to assert such an error and resulting prejudice); *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984) ("Because the error at the appellate stage stemmed from the error at trial, if there was no prejudice from the trial error, there was also no prejudice from the appellate error.") Petitioner has failed to establish that the Mississippi Supreme Court unreasonably applied the *Strickland* requirements contained in his arguments on this ground. Accordingly, this ground should be denied.

### **RECOMMENDATION**

The undersigned recommends that the relief sought in Watson's Petition [1] be denied

---

[10] (See [23-1] at 23.)

and that the Petition be dismissed with prejudice.

### NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.   The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.   The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 6th day of June, 2017.

s/ Michael T. Parker
United States Magistrate Judge